JoNes, Chief Judge,
delivered the opinion of the court:
The several plaintiffs ask for damages for alleged breach of contracts, due to defendant’s failure to deliver the number of mattresses which the plaintiffs claim the defendant was obligated to deliver under their several similar contracts with the Office of Surplus Property, Department of Commerce.
*242 Under Rule 9 (a) the hearings have been limited to the claim of A. Allan Silverton, doing business under the name of A. A. Silverton & Company, who will be referred to as plaintiff.
About September 21, 1945, the Office of Surplus Property sent circulars to dealers in rags and waste materials offering to sell used cotton-filled mattresses in lots of 1,000 or designated multiples thereof up to a maximum of 160,000 to any one purchaser. The prices varied from $1.30 to $1.00 per mattress depending on the quantity purchased.
Plaintiff by telegram, letter and telephone offered to purchase 160,000 such mattresses.
On October 1, 1945, plaintiff and the defendant, through the Office of Surplus Property, entered into a contract for the purchase by plaintiff of 160,000 mattresses, or such lesser quantity as the Government might make available for delivery under that and other similar contracts with other purchasers.
Among the material provisions of the contract were the following:
I. During the period beginning with the date of this contract and ending on January 31,1946, the Government agrees to sell and the Purchaser agrees to buy 160,000 used mattresses, or such lesser quantity as the Government may make available for delivery under this and similar contracts entered into by the Government with other, purchasers.
* * * * *
4. * * * It is further understood, that, if at the termination date of this agreement, deliveries have not been made in the amount of 160,000 mattresses, the parties hereto by mutual agreement may continue deliveries of mattresses hereunder until Purchaser has received 160,000 mattresses.
*****
II. Except as modified herein, this contract includes the terms and conditions set forth in Commerce Department Sales Conditions No. 1, dated July 9,1945, a copy of which is attached hereto.
Commerce Department Sales Conditions No. 1, referred to in said contract, provided in part as follows:
*243 The Government also reserves the right to withdraw from sale any property prior to the removal thereof without incurring any liability except to refund to the purchaser any amount paid with respect to such property.
Plaintiff executed the contract and returned it, together with a deposit of $40,000 as provided in the contract.
In early October plaintiff entered into three contracts with paper mills for the sale to them of a total of 95 carloads of 1,000 mattresses each at 5% cents per pound. One of the contracts had first stated 5% cents per pound, but before delivery started the price was changed to 5% cents per pound. The mattresses weighed approximately 23 pounds each.
Two other contracts were entered into in November 1945 with other mills for the delivery of a total of 36 carloads.
On January 31,1946, plaintiff made another contract with one of the same mills for a delivery of “six or seven carloads” at 6% cents per pound.
Plaintiff made deliveries on all these contracts, but as of October 20,1946, had completed deliveries only on the contract dated January 31, 1946.
In the meantime by a series of executive orders and one legislative enactment the functions of the Office of Surplus Property were transferred to and vested in the War Assets Corporation and finally in the War Assets Administration.
On January 31, 1946, the War Assets Corporation and plaintiff executed an amendment to the contract extending the time of delivery to June 30, 1946, or to such time before that date as 160,000 mattresses might be delivered to plaintiff. And on June 29, 1946, the War Assets Administration and plaintiff executed a similar amendment changing the final expiration date to December 31, 1946.
Section 16 of the Surplus Property Act of 1944, 58 Stat. 765-773, in respect to veterans’ priorities, is as follows:
Sec. 16. The Board shall prescribe regulations to effectuate the objectives of this Act to aid veterans to establish and maintain their own small business, professional, or agricultural enterprises, by affording veterans suitable preferences to the extent feasible and consistent with the policies of this Act in the acqui'si *244 tion of the types of surplus property useful in such enterprises.
By the act of May 8, 1946, 60 Stat. 168, Public Law 375, the Surplus Property Act of 1944 in respect to veterans’ priorities was amended by substituting Section 16 (a), which as thus amended, reads as follows:
Sec. 16 (a). The Administrator shall prescribe regulations to effectuate the objectives of this Act to aid veterans in the acquisition of surplus property, in appropriate quantities and types, to enable them to establish and maintain their own small business, professional, or agricultural enterprises. Disposals of surplus property (except real property) to veterans under this subsection shall be given priority over all other disposals of property provided for in this Act except transfers to Government agencies under section 12.
On the same day, May 3, 1946, the War Assets Administration issued its amended Regulation No. 2 which directed each disposal agency to set aside all surplus property in its possession for exclusive disposal to veterans for their own personal use or for enabling them to establish and maintain their own small business, professional, or agricultural enterprises. Such property was directed to be held for not less than 15 days, or for such longer period as the Administrator might direct, after public notice of its availability for disposal to veterans holding certificates.
The defendant continued to make some deliveries under the contracts with the several plaintiffs until October 30, 1946, but on that date defendant failed and refused to make any further deliveries to plaintiff under his contract. This action was taken on account of a ruling by the legal staff of the War Assets Administration that the act of May 3, 1946, required that used mattresses must be tendered to veterans, plus the fact that the exercise by veterans of their priority to purchase such mattresses was so extensive that it became clear to those in charge that none of them would be available for other purchasers.
On November 12, 1946, plaintiff wrote to the War Assets Administrator requesting fulfillment of his contract. The Administrator replied on November 25, 1946, calling attention to the escape provisions of the contract, reciting that *245 every effort had been made to fairly distribute the available surplus mattresses to the several persons or firms holding contracts; but stating that after the passage of Public Law No. 375 the preference to veterans and other claimants became mandatory and that the War Assets Administration had no alternative but to satisfy first the priority claimants. The letter further stated that if sufficient quantities of used cotton mattresses remained in surplus inventories after the requirements of priority claimants had been met, it was the intention of the Administration to resume allocations against the contracts as theretofore. However, after October 30, and before December 31, 1946, all used mattresses were sold by the War Assets Administration to persons holding certificates showing that such persons were veterans entitled to purchase such mattresses under the terms of the veterans’ preference provision.
During the period covered by plaintiff’s contract and extensions thereof the defendant delivered to plaintiff 71,989 mattresses. Plaintiff sues for the difference in the contract price and the market value of 88,011 mattresses which he claims defendant failed to deliver according to the terms of the contract. In his brief plaintiff especially urges that he is entitled to the difference in the contract price and the market value of his pro rata portion of the mattresses which would have been available for delivery to the various plaintiffs named herein and others holding similar contracts if all mattresses available during that period had been distributed on an equal percentage basis, in which event it is claimed that 41,981 mattresses would have been available as plaintiff’s share of the total number which under those circumstances would have been available under the several contracts.
We do not see how. according to the terms of the contract in the circumstances which are shown to have existed in this case the plaintiff is entitled to recover for any failure on the part of the defendant to deliver any of the mattresses which were the subject of the contract in question.
In the first place, the contract called for the delivery of 160,000 mattresses, or such lesser quantity as the Government might make available for delivery. In addition, under Sales Condition No. 1, which was made a part of the contract, *246 the Government reserved the right to withdraw from sale any property prior to removal thereof without incurring any liability except to refund to the purchaser any amount paid for such property.
When these two provisions are laid alongside the special circumstances existing in this case, we can find no reasonable basis for allowing recovery.
It is true that the general counsel for the agency in explaining why these escape clauses were written into the contract gave three reasons why he regarded such reservations as desirable. These three reasons are set out in finding 6. However, these reasons were not written into the contract, the terms of which are specific, concise, and do not require the giving of any reason so long as the facts of the case bring them within the terms of the exception — namely, the escape clauses. North and Judd Mfg. Co. v. United States, 114 C. Cls. 355, 370; Schneiderman, et al. v. United States, 117 C. Cls. 715.
There are other reasons good and sufficient why we do not think the Administrator was at fault in taking the course which he did.
Section 16 of the Surplus Property Act of 1944, supra, directing the Board to prescribe regulations affording veterans suitable preference in disposing of surplus property was in effect prior to and at the time of the execution of the contract with the plaintiff, and therefore the contract was subject to its terms. By the terms of the act of May 3,1946, amending the Surplus Property Act of 1944, this veterans’ preference was strengthened and the Administrator directed to afford veterans priority over all other disposals of surplus property, and on the same date regulations were issued which gave the veterans preference for not less than 15 days after notice of availability, and for such longer period as the Administrator might determine in the disposal of surplus property.
Under the terms of the original Surplus Property Act of 1944 the Administrator was justified in giving veterans a preference in the disposal of these mattresses and limiting the disposal under the contract in question and similar contracts to the number which became available after compliance with these terms of preference.
*247 The major effect of the act of May 3, 1946, was to give the veterans a somewhat higher preference, to emphasize that preference and to make it completely mandatory. There is nothing in the record to show that plaintiff failed to be allotted his proportionate share of the mattresses available prior to May 3, 1946. There is no evidence in the record that the plaintiff failed to receive after that date and prior to December 31, 1946, his proportionate share of the mattresses available after the compliance with the mandatory veterans’ preference features of the act of May 3, 1946.
After that date the Administrator could not without violating the plain terms of the law deliver to any private contractor any mattresses that were desired by veterans holding certificates. He did deliver córtain mattresses to these various contractors between that date and October 30, 1946. After October 30, 1946, it became apparent to him that there would probably be no more than enough mattresses to comply with the requirements of veterans holding preference certificates, and the record does not in any way establish that more were made available during that time. In early December the amount of plaintiff’s deposit was returned to him.
Under the facts of the case the plaintiff Silverton is not entitled to recover.
The several other plaintiffs in this case joined as parties plaintiff pursuant to Hule 9 (a), alleging that there are questions of law and fact common to all the plaintiffs in-the series of transactions leading to this petition. In the petition these various parties are named, and the amounts and dates of the purchases and delivery are set out. The facts except for the number of mattresses delivered to each of the plaintiffs are substantially the same, so' that the disposition of the legal question herein involved affects all the plaintiffs in the same way. None of the plaintiffs named herein is entitled to recover, and the petition is therefore dismissed as to each of them.
Howell, Judge; Madden, Judge; Whitaker, Judge; and Littleton, Judge., concur.